# EXHIBIT C

## Agreement

# COLLECTION SERVICES AGREEMENT

This Agreement ("Agreement") dated this ___ day of September, 2018 is by and between Alfred T. Giuliano (the "Trustee"), as chapter 7 trustee for the estates of Leading Edge Logistics LLC, Alliance Traffic Group, LLC, LEL Enterprises LLC, and LEL Caribe, LLC (collectively, the "Debtors")[1] (hereinafter "Client" or "Party"), and JNR Adjustment Company, Inc., a Minnesota corporation, having its principal place of business at 7001 E. Fish Lake Road Suite 200, Minneapolis, Minnesota 55311, (hereinafter "JNR" or "Party") (hereinafter referred to together as the "Parties").

## RECITALS

A. Client has obtained certain default judgments through litigation against third parties which it desires to be collected ("Accounts"); and

B. JNR provides collection services, including but not limited to telephone contact with debtor, analysis of potential Accounts, and collection of debts ("Collection Services"); and

C. Client wishes to utilize JNR's Collection Services on a case-by-case basis.

NOW, THEREFORE, in consideration of the recitals and the mutual promises contained herein, Client and JNR agree as follows:

## ARTICLE ONE
## SERVICES

1.1 Client agrees to refer to JNR, and JNR agrees to accept from Client, certain Accounts for which JNR will provide Collection Services for said purpose of collecting amounts owing on said Accounts.

1.2 JNR shall place all money collected on said Accounts where such money is paid directly to JNR into JNR's trust account and total NET sums collected on behalf of Client will be remitted, with a statement identifying the applicable Account, directly to Client promptly. Any settlement payments collected by check will be endorsed over to the Trustee.

1.3 The Accounts referred to JNR shall be on a case-by-case basis at the sole discretion of Client. Nothing herein shall constitute an obligation by Client to refer any or all Accounts to JNR.

---

[1] The Debtors chapter 7 bankruptcy cases are pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") and jointly administered as In re Leading Edge Logistics, LLC, et al., Case No. 14-11260 (MFW).

1.4 For purposes of establishing the proper Commission, the Accounts shall be classified as Collection and/or Subrogation or Returns, as defined below.

    1.4(a) "Collection and/ or Subrogation" are defined as Accounts that Client previously obtained default judgments against certain third parties.

    1.4(c) "Returns" are defined as any account recalled by Client for any purpose whereby JNR's Collection Services as to such account are terminated. Notwithstanding anything to the contrary herein, Client may recall any account subject to the terms of 2.2(b).

1.5 Prior to engaging any law firm to initiate litigation on Client's behalf, JNR shall obtain Client approval authorizing litigation in writing.

1.6 Client retains complete authority to enter into negotiations or any agreement for the settlement of litigation initiated on Client's behalf.

## ARTICLE TWO
## COMMISSION

2.1 Client agrees to pay JNR a Commission for all amounts collected on Client's behalf on referred Accounts, including any court awarded attorney fees, judgment, award, or settlements, hereinafter referred to as "Qualifying Payments," subject to Article 3. Commission shall be earned on all Qualifying Payments, whether such Qualifying Payments were paid to Client, JNR or any law firm.

2.2 The Commission amounts shall be based upon classification of the Account.

    2.2(a) Collection and/or Subrogation: JNR shall be paid a 20% commission of the amount collected (25% commission of the amount collected for Accounts under $20,000).

    2.2(b) Returns: JNR shall not be entitled to any commission for accounts recalled by Client at any time, unless payment is received on the account within thirty- (30) days of its recall by Client and such payment is a direct result of JNR's efforts. In such case, the commission earned by JNR shall be the same as set forth above, whichever applies, subject to Article 3.

2.3 In the event the amount collected is paid directly to Client, JNR shall invoice Client for the commission due.

2.4 JNR will submit an invoice for commissions earned associated with each statement. Client

agrees to pay uncontested statements within thirty (30) days of receipt. Should Client contest any amounts listed on any invoice, Client may choose to pay the uncontested portion or reject the entire invoice until the discrepancy is resolved. Notwithstanding any other provision of this Agreement, JNR agrees that payment of its Commission for any amounts collected shall be subject to a fee notice procedure through the Bankruptcy Court whereby the Trustee shall file and serve a notice indicating the amount of Commission to be paid and such fee notice shall be subject to a ten (10) day objection period, after which the Client may pay the amounts due to JNR.

## ARTICLE THREE
## ATTORNEY FEES, COSTS

3.1  All costs as defined herein shall be paid by JNR. Costs shall include, but not be limited to, filing fees, copy charges, deposition transcript fees, court reporter fees, expert witness fees, consultant fees, fees of consulting or testifying accountants, fees of electronic discovery consultants, fees of Information Technology consultants, travel costs, phone charges, facsimile charges, legal research fees, any fees determined to be the costs of litigation as defined by any state or federal law, and all other fees, costs, and all costs reasonable and necessary for the effective prosecution and/or defense of the claim or litigation.

3.2  Costs shall be deducted from Qualifying Payments prior to calculation of the commission. If no monies are collected, then Client shall not pay any costs. JNR shall be entitled to receive reimbursement for costs only up to the amount of the Qualifying Payment. If the amount of costs exceeds the Qualifying Payment, then Client shall not be responsible for any deficiency.

3.3  In the event Client recalls an account after litigation has commenced, Client shall reimburse JNR for any costs paid. JNR shall submit to Client within thirty- (30) days of the account's recall an invoice for any reimbursable costs.

## ARTICLE FOUR
## CONFIDENTIALITY AND PRIVILEGE

4.1  Client agrees to provide JNR all reasonably necessary information and documentation required to establish and collect any Account referred to JNR for collection.

4.2  JNR may provide a debtor proof of its debt, if so requested.

4.4  The Parties agree that the terms and conditions of this Agreement and all information, whether written or oral, of any form or media, related to Client, whether received from or on behalf of Client, whether marked or not, are proprietary and confidential to Client ("Confidential Information"). JNR shall not use or disclose Confidential Information without Client prior written consent and will not use Client name or Confidential Information in any discussions with third parties.

## ARTICLE FIVE
## TERM

5.1.1 The term of this Agreement shall be three- (3) years from the effective date herein stated, unless terminated earlier pursuant to the terms set forth in 5.2.

5.1.2 **TERMINATION FOR CAUSE:** If either party determines that a material breach has occurred that would be cause for cancellation of this Agreement, the non-offending party may cancel this Agreement immediately. The party wishing to cancel shall notify the other party of the alleged breach in writing, and advise that they wish to cancel this Agreement. All Client files in JNR's possession at the time of termination will be returned to Client within fifteen (15) business days.

5.1.3 **TERMINATION WITHOUT CAUSE:** Either party may terminate this Agreement at any time by notifying the non-terminating party in writing of its decision to terminate the agreement. Such notice shall be given thirty (30) days prior to termination.

## ARTICLE SIX
## INDEMNIFICATION

6.1  JNR shall defend, indemnify, and hold harmless Client, its officers, employees and contractors from and against any and all claims, losses, liabilities, counsel fees, costs and expenditures incurred by or asserted against Client arising out of or related to the acts or omissions of JNR, its officers, employees or contractors in its performance of services under this Agreement, unless caused by the gross negligence or the willful misconduct of Client, its officers, employees or its contractors.

## ARTICLE SEVEN
## INSURANCE

7.1  JNR shall carry or cause to be carried and maintained in force throughout the entire term of this Agreement insurance coverage as described below with insurance companies reasonably acceptable to Client. Within thirty- (30) days after commencing the service hereunder, JNR shall deliver to Client certificates of insurance on an Acord 25 or 25S form evidencing the existence of the following insurance coverage. All costs and deductible amounts will be for the sole account of Client.

7.1.1 Commercial or Comprehensive General Liability insurance on an occurrence form with a combined single limit of $1,000,000 each occurrence, and annual aggregates of $1,000,000 each, for bodily injury and property damage, including coverage for blanket contractual liability, broad form property damage, personal injury liability and independent contractor.

7.2  Under the policy described above, Client, its parent, subsidiary and affiliated companies will be named as additional insured as respects any work performed under this Agreement.

## ARTICLE EIGHT
## LIMITATION OF LIABILITY

8.1 IN NO EVENT SHALL CLIENT BE LIABLE FOR ANY INCIDENTAL, INDIRECT, SPECIAL, CONSEQUENTIAL OR PUNITIVE DAMAGES, INCLUDING WITHOUT LIMITATION LOSS OF PROFITS, REVENUE, OPPORTUNITY OR GOODWILL, WHETHER IN AN ACTION IN CONTRACT, TORT OR ANY OTHER LEGAL THEORY, EVEN IF CLIENT HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, EXCEPT FOR ITS INDEMNIFICATION OBLIGATIONS, CLIENT'S CUMULATIVE LIABILITY UNDER THIS AGREEMENT SHALL IN NO EVENT EXCEED THE COMMISSION AMOUNTS OR HOURLY FEES OWED TO CONTRACTOR UNDER THE TERMS OF THIS AGREEMENT.

## ARTICLE NINE
## MISCELLANEOUS

9.1 The relationship between Client and JNR shall be that of independent contractor and in no event shall persons employed by either party be held to be or construed to be employees of the other.

9.2 This Agreement may only be amended or modified by a written instrument executed by both Parties.

9.3 This Agreement describes the entire agreement between the Parties and is binding upon and will inure to the benefit of their successors and permitted assigns. This Agreement supersedes all prior written and oral agreements and understandings between the Parties.

9.4 This Agreement may not be assigned or transferred by JNR without the written consent of Client which consent shall not be unreasonably withheld.

9.5 The failure of either party to enforce any provision hereof shall not constitute the permanent waiver of such provision.

9.6 This Agreement shall be governed by and shall be construed and enforced in accordance with the laws of the state of California, irrespective of its choice of law rules. Any legal procedure brought to enforce this Agreement may be brought in SF County, California or in the United States District Court in the 9th Judicial District of California.

9.7 In the event JNR, in pursuing an account, identifies that the debtor party from whom the collection should take place is or will likely be one of JNR's other clients, JNR shall immediately notify Client of the potential conflict of interest and cease all collection efforts. Should both Parties determine that no conflict exists, JNR may resume the collection services.

9.8  JNR represents and warrants that it collection practices comply with the Fair Debt Collection Practices Act and the Telephone Consumer Protection Act of 1991 as well as any other state and federal law designed to protect consumers in connection with debt collection and customer contacts.

In witness whereof, the Parties hereto have executed this Agreement by their duly authorized agents as of the effective date set forth herein.

JNR ADJUSTMENT COMPANY, INC.

By: _Robert Nielsen_

Name: Robert J Nielsen

Title: V.P.

Date: 9/6/18

ALFRED T. GIULIANO,
solely in his capacity as Chapter 7 Trustee
for the estates of Leading Edge Logistics, LLC, et al.

By: _[signature]_

Name: Alfred T. Giuliano

Title: Trustee

Date: 9/6/18